PEOPLE v. CORNELIUS.

(Supreme Court, Appellate Division, Third Department. January 11, 1899.)

1. CRIMINAL LAW—EVIDENCE.
Admission of the testimony of the stenographer who attended the grand jury when the indictment was found, that a third person, in whose presence the crime was stated by the prosecuting attorney to have been committed, was a material witness for the people before such jury, was prejudicial error, when followed by evidence of interviews between defendant and such person just before the trial, and when, on being called, she refused to testify on the ground of privilege.

2. RAPE—EVIDENCE.
The testimony of a physician, whose examination of the prosecuting witness was made just before or at the time of the trial, about four years after the alleged commission of the crime,—the witness having in the meantime had intercourse with persons other than defendant,—was improperly received.

Appeal from Tompkins county court.

Dennis Cornelius was convicted of the crime of rape, and he appeals. Reversed.

Argued before PARKER, P. J., and LANDON, HERRICK, PUTNAM, and MERWIN, JJ.

Monroe M. Sweetland, for appellant.

Charles H. Blood, Dist. Atty., for the People.

HERRICK, J. The character of the offense charged here is of such enormity, and its details so revolting, that jurors, in their indignation at the character of the offense charged, and their desire to see one guilty of such a crime adequately punished, are apt to lose sight of the only real issue in the case,—that is, whether the person charged is in fact guilty of the crime; and it becomes necessary, when such cases are on trial, to adhere strictly to those rules of evidence which are intended to exclude extraneous matter, and to admit only such evidence as legitimately bears upon the true issue to be tried. This case belongs to that class of cases that is very difficult to defend, and the defendant should not have added to his difficulty in establishing his innocence the reception of matter calculated to prejudice him in the minds of jurors, unless such evidence is strictly legitimate. Without rehearsing the details of the crime charged, or the evidence given in support of it, I will content myself with the consideration of but a few of the numerous exceptions brought before us for our consideration.

It was stated by the district attorney that the crime was committed in the room of, and in the presence of, one Sarah Anderson, and evidence was given that the defendant was frequently seen going into the house where the said Sarah Anderson had her rooms. Subsequently the stenographer who attended the grand jury when the indictment was found against the defendant was sworn on behalf of the people, and testified that Sarah Anderson was a material witness for the people before said grand jury. This evidence at the time it was given was incompetent and immaterial, and it was made particularly objectionable by what followed. After this evidence the people proceeded to prove that, at the term of court next preceding the one at which the defendant was tried, the defendant took Sarah Anderson away with him the Saturday before the case was moved for trial, and asked witness to marry her and go to Pennsylvania; that the defendant said she knew a lot about the case, but would not tell. By another witness, that the defendant and Sarah Anderson were driving together after the subpoena had been served upon her to attend the term of the court at which the indictment was tried. And evidence was also given that Sarah Anderson was seen going into the office of the defendant's counsel. Then Sarah Anderson herself was placed upon the stand, and she declined to give evidence in the case, upon the ground of privilege. Starting, then, with the statement of the district attorney as to where, when, and in whose presence the crime was committed, followed up by the testimony of the stenographer that Sarah Anderson gave material evidence before the grand jury, the trial jury is informed that the defendant said she knew a lot about the case, and also informed that the defendant tried to induce her to leave the

state, and this is capped by her refusal to testify upon the ground of privilege. From all this the inference that they would naturally draw is that the material evidence she gave before the grand jury, and that she declined to repeat upon the trial, was to the effect stated by the district attorney, as to when, and in whose rooms and presence, the crime charged was perpetrated; and thus the evidence of the stenographer, perhaps harmless, although incompetent when given, is made extremely damaging to the defendant.

The evidence of the doctor who made an examination of the plaintiff was also improperly received. Such examination was made in 1898, just before or during the progress of the trial, about four years after the alleged commission of the offense, and the complainant having admitted that in the meantime she had had intercourse with other people. Under such circumstances, the evidence of the doctor could not be corroborative evidence tending to connect the defendant with the crime charged. The error of its reception was not cured by the court, at the close of the evidence, limiting the effect to be given to it as tending to corroborate the complainant's testimony as to her condition; she herself having given evidence of facts, other than the alleged acts of the defendant, from which that condition might result.

Without discussing the other exceptions in the case, but for errors in the reception of the evidence herein referred to, the judgment should be reversed, and a new trial granted. All concur.